37197-1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBORAH LAUFER, Individually, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 3:20-cv-00758-JPG |
| ) | |
| OLD CAPITOL PROPERTIES, LLC d/b/a HOLIDAY ) | |
| INN EXPRESS & SUITES VANDALIA, Individually, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, AND/OR FAILURE TO STATE A CLAIM, MOOTNESS, AND IN THE ALTERNATIVE, LACK OF CREDIBILITY**

Plaintiff Deborah Laufer ("Plaintiff"), filed suit against Defendant Old Capitol Properties, LLC ("Old Capitol") doing business as Holiday Inn Express & Suites in Vandalia, Illinois ("HIE&S Vandalia") alleging that HIE&S has violated the Americans with Disabilities Act ("ADA"). Plaintiff claims that the online reservation systems appearing on third-party travel websites, such as expedia.com and booking.com, do not contain sufficient information for the plaintiff, a Florida resident, with no intention of visiting the State of Illinois until after the "passing of the Covid crisis", to identify ADA accessible rooms at the HIE&S Vandalia, located in Vandalia, IL. [Doc. 51]. Despite the court's grace in granting Plaintiff leave to amend twice, the plaintiff has not cured the numerous defects previously identified by Old Capitol.

Most notably, Plaintiff lacks standing. The Seventh Circuit has made clear that informational harm to website "testers" like the Plaintiff simply does not, alone, rise to the level of a particularized, concrete injury to confer Article III standing. Plaintiff also lacks standing as an individual. A bare assertion that Plaintiff intends to travel to this venue when the Covid-19 pandemic ends fails to meet the standard of imminence required for future injury. Moreover, the

local ownership of the HIE&S does not maintain the content of third-party websites, such that Old Capitol did not cause any ADA compliance issue and cannot redress this Plaintiff's concerns.

Even if Plaintiff could meet her burden to establish standing, she has not stated a viable claim under the ADA regulations. With regard to the content of third-party websites, the ADA regulations provide that a hotel owner need only make *reasonable efforts* to make ADA accessibility information available through *some third party sites.* Plaintiff has not alleged that Old Capitol failed to make reasonable efforts to make ADA information available through at least some third-party services, but rather, asserts that Old Capitol "maintains" each of the third-party websites, and attributes their ownership to Old Capitol as "Defendant's websites." Plaintiff seeks to hold Old Capitol strictly responsible for the ADA content provided by expedia.com and similar sites, as though Old Capitol owns them. This is factually incorrect, unsupported by well-pleaded allegations, and legally insufficient to state a claim.

Moreover, if Plaintiff would simply check the content of the HIE&S Vandalia website, which Old Capitol has repeatedly encouraged, she would find the ADA information she seeks. Therefore, even assuming Plaintiff's allegations concerning expedia.com and similar sites are true, not only is such information available through other third-party websites, as required by the ADA regulations, but this matter is also moot because the information Plaintiff seeks is readily available.

Further, in light of the filing of at least 567 cookie-cutter lawsuits, in 16 different states, this Plaintiff's credibility is in question. This particular plaintiff has a history of failing to allege sufficient facts that would give rise to subject matter jurisdiction in various federal district courts. Upon facing the possibility of dismissal, it is common for this plaintiff to manufacture an allegation that she intends to travel to the venue at issue at some unnamed time in the future. Her various assertions present problematic inconsistencies that would allow this Court to find there is no standing. Each of these issues will be addressed in turn.

I. **Plaintiff Lacks Standing Before This Court, Because Plaintiff Cannot Demonstrate an Injury-in-Fact and Has Sued a Defendant That Did Not Cause the Violation Alleged, and Who Also Has No Ability to Redress Plaintiff's Alleged Injury.**

Article III of the Constitution specifies that " [t]he Judicial Power shall extend to all Cases… [and] Controversies…" U.S. Const., Art. III, § 2. Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement. *Scherr v. Marriott International,* 703 F.3d 1069, 1073-74 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). A plaintiff must meet three key requirements to establish standing: the plaintiff must show (1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability. *Scherr,* 703 F.3d at 1073-74. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Where, a case is at the pleading stage, the plaintiff must "clearly… allege facts demonstrating" each element. *Id.* Lastly, Plaintiff must have had standing at the commencement of this suit. *Pollack v. U.S. Dep't of Justice,* 577 F.3d 736, 743 n.2 (7th Cir. 2009). Here, the plaintiff cannot establish an injury-in-fact, traceability or redressability, and therefore lacks standing.

A. **There is no Injury-in-Fact Because Plaintiff's Alleged "Informational" Injury is Not Particularized and Concrete, nor Actual and Imminent.**

The Supreme Court has described the injury-in-fact requirement as the "[f]irst and foremost" element of standing. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). To satisfy the injury-in fact prong, the plaintiff must allege that she suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo,* 136 S. Ct. at 1548. An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Larkin v. Finance System of Green Bay*, 982 F.3d 1060 (7th Cir. 2020). The claimed injury cannot be a generalized grievance shared by all members of the

public. *Id.* Instead, the plaintiff must have personally suffered an actual injury or an imminent threat of injury. *Id.* An injury is concrete where it is "real" and not abstract. *Id.*

To establish "injury-in-fact" under Title III of the ADA, which authorizes only prospective injunctive relief, a plaintiff must allege that a "real and immediate" threat of future violations exists. *Scherr,* 703 F.3d at 1074-1075. To establish a threat of future harm, the plaintiff bears the burden to show both a past harm and factors suggesting it will occur again. *Id.* This requires a plaintiff to "allege past injury; show that it is reasonable to infer from [her] complaint that this discriminatory treatment will continue; and show that it is also reasonable to infer, based on the past frequency of [her] visits and the proximity of the public accommodation to [her] home, that [she] intends to return to the public accommodation in the future." *Scherr,* 703 F.3d at 1074.

In cases where there is no past injury, the strength of her claim for a possible future injury is all the more important. *See Faircloth v. McDonald's Corp.*, 2018 U.S. Dist. LEXIS 193286, at *6-7 (N.D. Ill. 2018). Courts have identified four factors relevant to this inquiry: (1) the "history of plaintiff's patronage of a particular location"; (2) the "proximity of the place in question to the plaintiff's residence or location of frequent travel"; (3) the "definiteness of the plaintiff's plans to return"; and (4) "the plaintiff's frequency of travel near the defendant establishment." *Id.* In *Scherr,* for example, the court found that a plaintiff lacked standing to challenge ADA accessibility at numerous hotels where she made no claim that she would visit a particular hotel but for the alleged ADA violations, and she did not show an intent even to return to any geographic area where the hotels were located. The court concluded, "[a]bsent such a showing, she cannot establish standing to pursue her claim against the other hotels." *Scherr,* 703 F.3d at 1075.

An "ADA tester" who seeks to confirm ADA compliance must likewise satisfy the elements of standing, including the injury-in-fact requirements of a particularized and concrete injury. *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019). In *Carello*, the Seventh

Circuit affirmed that the plaintiff lacked standing as an ADA "tester" to sue a credit union for a violation of the ADA, where the visually impaired tester was unable to access information on the credit union website. *Id.* at 832. The court found that an informational harm to a "tester" resulting from a lack of access to information on the website could, conceivably, be cognizable. *Id.* at 834. However, the plaintiff's action of simply trying to access information on a website was found insufficient to establish a "concrete" and "particularized" injury, because Illinois law prohibited the plaintiff from using the credit union, in any event, because he was not a local city or county employee. *Id.* Thus, the information harm did not apply to plaintiff, except to the extent that he was offended by it as an ADA tester. *Id.* The court found such dignitary harm, absent a concrete resulting injury, to be insufficient to establish standing. *Id.*

The court specifically analogized the legal barrier applicable to credit union membership to the geographic barriers, like that in *Scherr*, typically applied to ADA compliance claims, saying:

> [m]uch like a geographic barrier between the plaintiff and defendant can reduce the personal impact of the injury and render it too abstract, the legal barrier here reduces—indeed, eliminates—the cognizable impact of the Credit Union's conduct on Carello… And in the absence of any personal impact on Carello, his alleged injury is necessarily abstract, amounting to mere indignation that the Credit Union is violating the ADA.

*Carello,* 930 F.3d at 834 (internal quotations omitted). The *Carello* court thus specifically confirmed the traditional geographic test remained applicable to ADA website testers, because it speaks to the concrete and particularized prongs of the injury-in-fact analysis, which remain applicable to information injuries on a website. That is, for a mere information harm to be particularized, "[t]here must be some connection between the plaintiff and the defendant that 'differentiates' the plaintiff so that his injury is not 'common to all members of the public.'" *Id.* (citing *Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019)). Here, as in *Carello*, Plaintiff alleges nothing to differentiate herself from any other person accessing a website from a distant venue and, thus, no concrete and particularized injury.

37197-1

Plaintiffs seeking to avoid meeting the requirement of a concrete and particularized injury often attempt to rely on an inaccurate reading of *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In *Havens Realty*, the plaintiff sued the defendant after it falsely told her that an apartment complex had no vacancies. The plaintiff had requested the information, because she suspected that the defendant was engaged in unlawful racial steering practices against black renters. *Id.* at 368-369. The court found that this "tester" established standing, but the bare harm of receiving inaccurate or incomplete information was not the harm that the plaintiff alleged. *Id.* at 373. Rather, the concrete, particularized harm came from the information being deliberately directed to plaintiff "because of race," a harm that the Fair Housing Act was designed to protect. *Id.*

The Seventh Circuit drew this distinction in *Casillas v. Madison Ave. Assoc.*, rejecting the notion that *Havens Realty* allows for standing based on an informational harm alone. 926 F.3d 329, 338 (7th Cir. 2019). There, the Seventh Circuit explained that *Havens Realty* reasoned it was the deliberate racial prejudice directed against that plaintiff that did the work of creating the concrete, particularized harm, not the lack of information itself. *Id.* ("[T]he bare harm of receiving inaccurate or incomplete information is not the harm that the plaintiff in *Havens Realty* alleged. She claimed the harm of being lied to because of her race. That was an invasion of the very interest that the Fair Housing Act protects: freedom from racial discrimination in the pursuit of housing.") The Seventh Circuit thus concluded there that an informational harm is not, without more, concrete and particularized to create standing. *Id.* at 339.

The Seventh Circuit has since repeatedly clarified that a congressional decision to create a cause of action concerning such intangible, informational harms, such as that under the ADA, "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *See Larkin*, 982 F.3d 1060 (7th Cir. 2020). When a plaintiff sues for "a bare procedural violation"

37197-1

of a statute and has not alleged a concrete, particularized personal injury from the violation, he has not satisfied the injury-in-fact requirement. *Id.; see also Gubala v. Time Warner Cable, Inc*., 846 F.3d 909, 911 (7th Cir. 2017)(no actual risk of harm equals no standing).

In *Larkin*, for example, the court found no standing where a defendant allegedly violated the Fair Debt Collection Practices Act by providing incorrect information in a debt collection letter, but the plaintiffs alleged no concrete harm, because that information did not actually cause them to pay debts they did not owe. *Id*. The mere information in the letter was not, alone, sufficient to establish standing. *Id.* That is, unless the plaintiff *actually intends to use the information* in the manner intended by the statute, an alleged informational harm is not a concrete and particularized injury. *Id., see also Spuhler v. State Collection Service,* 2020 U.S. App. LEXIS 39434, at *7 (7th Cir. 2020). Here, Plaintiff has made no allegation that she actually intended to use the ADA information sought on third-party websites to reserve a room or travel to Illinois at a specific time. As such, she lacks standing.  *See Scherr,* 703 F.3d at 1074-1075.

Admittedly, the question of ADA website tester standing has resulted in confusion in some courts. In *Laufer[1] v. U.L.S.T., LLC,* 2020 U.S. Dist. LEXIS 206417 (N.D. Ill. Nov. 4, 2020), a Northern District of Illinois court found viewing a webpage sufficient to confer standing, but failed to appreciate the distinction between an "informational" harm (approved by *Carello*) and particularized, concrete injury (elements clearly not eliminated by *Carello*). That court simply conflated the concept of informational harm with concrete injury and assumed, contrary to *Carello*, that all informational harms are necessarily concrete and particularized.  *Id*. at *13.

As found by the *U.L.S.T.* court, it is true that an ADA tester plaintiff may allege a dignitary or informational harm; but, a tester must still show a future connection to the facility, and thus a

---

[1] The action currently before this Court is but one of many nearly identical cases filed by this same Plaintiff Laufer under the same allegations nationwide. The Court may take judicial notice that Ms. Laufer has already filed at least ten (10) such cases in the U.S. District Court for the Southern District of Illinois.

dignitary or informational injury that is concrete and particularized to them. *See Carello*, F.3d at 834 ("not all dignitary harms are sufficiently concrete to serve as injuries in fact.") This is because the alleged loss of information itself is not necessarily a concrete injury without a reasonable intent to act on that information. *See Larkin*, 982 F.3d 1060. For an ADA tester's claim to be particularized and concrete, the plaintiff must make a showing of intent to return to the facility itself, not merely view it on a webpage. *See Scherr,* 703 F.3d at 1074-1075.

A more recent decision, *Laufer[2] v. Laxmi & Sons, LLC,* 2020 U.S. Dist. LEXIS 216752, at *48-49 (N.D.N.Y. Nov. 19, 2020), lays out the correct analysis and, in doing so, effectively dismissed approximately twenty cases filed by Plaintiff Laufer in that venue. There, the court found that this Plaintiff, again acting as an "ADA tester," cannot establish standing merely by viewing a webpage, or demonstrating merely an intent to return to the webpage, because absent the intent to utilize the services or facilities found on the webpage, the supposed "informational" injury is not particularized as required by *Carello, Griffin,* and similar Second Circuit decisions. It is not enough for this Plaintiff to seek out a "bare procedural violation" on the internet, without some particularized intent to use the facilities that are associated with that alleged informational harm. *Id*. at 39 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549). The *Laxmi* court correctly reasoned that the rule proposed by Plaintiff here, allowing pure testers to sue websites for ADA violations, "'admits of no limiting principle,' as it 'would allow any aggrieved person to challenge any allegedly deficient website belonging to anyone in the country,' entirely eviscerating the limitations on standing imposed by Article III." *Id*. at *48 (collecting authorities).

Another decision involving this Plaintiff, *Laufer v. Galtesvar OM, LLC*, 2020 U.S. Dist. LEXIS 240714, at 20 (W.D. Tex. Nov. 23, 2020), supports the contention that Laufer does not have

---

[2] All cases bearing the name, Laufer, cited in this memorandum entail the same Laufer currently before the Court.

standing as a tester. That court stated the fact testers have demonstrated concrete injuries in other cases, does not imply that the plaintiff′s motivations when interacting with the defendant are irrelevant to the injury in-fact inquiry. *Id* at 19. The court reasoned that any tester, disabled or not, would have encountered the same difficulty when attempting to access the information sought by the plaintiff. *Id* at 20. That court held, "Without an allegation that she was actually considering staying in the Hotel or that the experience accessing information on the website was detrimentally different due to her disability, Laufer cannot demonstrate concrete injury." *Id*. Citing *Hernandez v. Caesars License Co., LLC*, 2019 U.S. Dist. LEXIS 172456, 2019 WL 4894501 (making same finding).

Here, Plaintiff alleges she is deliberately collecting supposed dignitary harms by viewing webpages, but none of those alleged harms cause any injury that is concrete or particular to her. Plaintiff Deborah Laufer is a resident of Pasco County, Florida. [Doc. 51, ¶1]. Plaintiff identifies herself as a "tester" for the purpose of asserting her civil rights and monitoring, ensuring and determining whether place of public accommodation and their web sites are in compliance with the ADA [Id., ¶2]. Plaintiff alleges she visited certain third-party websites, such as expedia.com, and finds that the details listed there for the HIE&S Vandalia do not provide the accessibility information she seeks. [Id., ¶11]. Plaintiff alleges that she keeps a list of these "informational harms" and that she intends to revisit the websites again. [*See id*., ¶12].

Plaintiff's allegation that she keeps a running list of whether she finds a third-party reservation website compliant with the ADA is not an injury-in-fact. Any "harm" she experienced is no different than any other person accessing the internet from a distant venue. The Seventh Circuit remains clear on this point: for a mere informational or dignitary harm to be particularized and concrete, "[t]here must be some connection between the plaintiff and the defendant that

'differentiates' the plaintiff so that his injury is not 'common' to all members of the public." *Carello,* 930 F.3d at 834.

Plaintiff's Second Amended Complaint contains no allegations that she has ever traveled to HIE&S Vandalia; that she has intent to travel to Vandalia, IL and stay at the hotel until after the Covid-19 pandemic passes; or that she has ever traveled to Vandalia, IL and was prevented from reserving a room which is accessible for a disabled individual as defined under the ADA. Likewise, Plaintiff does not plausibly allege that she has intent to travel to Illinois to stay at the HIE&S Vandalia for any purpose until the end of the Covid-19 pandemic. Further, she has not alleged the third party websites prevented her from travelling to Illinois. [*See* Doc. 51]. Plaintiff lacks standing, because she has no concrete and particularized injury. *Id.*; *Scherr,* 703 F.3d at 1074.

It is apparently common for this Plaintiff, upon facing the likely prospect of dismissal, to attest that she actually intends to visit the venue at issue. The addition of an allegation of this sort is made in an attempt to "individualize" the harm to this specific plaintiff. Essentially, pure testers like Plaintiff, by definition, have no desire to actually use the room reservation website, and the information required by ADA regulation §36.302(e)(1) has no specific relevance to them beyond their generalized desire to find ADA violations and file lawsuits. *See Laufer v. Naranda Hotels, LLC,* 2020 U.S. Dist. LEXIS 235894, at *12-13 (D. Md. Dec. 16, 2020) (noting that Plaintiff Laufer has filed at least 557 suits in 16 different states, rejecting plaintiff's theory of standing); *see also Laufer,* 2020 U.S. Dist. LEXIS 240714, at 20, (noting veracity concerns with Plaintiff's Laufer's post-filing affidavit asserting an intent to visit Texas, which was identical in verbiage to that filed in the Northern District of Illinois in *Laufer v. U.L.S.T.*).

This Plaintiff cannot cure the deficiency with an incredible, late claim of an intent to visit Illinois. Standing is evaluated at the time the suit is filed and cannot be manufactured thereafter. *See Pollack,* 577 F.3d at 743. Plaintiff has twice attempted to plead an ADA claim without any

allegation that she intends to visit Illinois for any purpose. [*See* Doc. 1, 37]. The new allegation comes perilously close to a Rule 11 violation. Rule 11(b) states, "By presenting to the court a pleading … an attorney certifies … (2) the claims … are warranted by existing law or by nonfrivolous argument … (3) the factual contentions have evidentiary support, or, … will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* Fed. R. Civ. P. 11.

In her Second Amended Complaint, Plaintiff added the extremely late allegation that "Plaintiff originally intended to travel during the summer of 2020, but is now awaiting the passing of the Covid crisis. When that abates, she will undertake her journey." [Doc. 51, ¶10]. The Plaintiff also alleged she will "Need to stay in hotels and needs hotels to comply with the Regulation so she can make a meaningful selection." *Id*. The latest amended complaint does not establish that the plaintiff has ever travelled to Illinois, or to the Vandalia area in the past, or that she ever attempted to book a room at HIE&S in the past, or at any hotel in Illinois in the past. The new allegations do not offer any facts to explain why the plaintiff has an interest in travelling to Illinois in the *foreseeable* future. The fact that Plaintiff now states she is "awaiting the passing of the Covid crisis" before travelling is significant to the issue of imminent future injury. There is no indication as to what Plaintiff means by "the passing of the Covid crisis". Whether measured by a test positivity rate or pervasive vaccine administration or eradication of disease, the one thing that is foreseeable is that unnecessary cross country travel anytime soon is inadvisable. Indeed, the original complaint was filed on August 5, 2020 literally in the midst and height of pandemic. To say, the latest assertion about travel is questionable gives it too much credit. There simply is no basis to conclude there is an ability to establish specific or concrete plans and the threat of imminent future injury.

The new allegation, even if true, amounts to nothing more than plans to come to Illinois *eventually*. The Supreme Court discussed the issue of whether indefinite future plans to travel to a

particular location give rise to standing under Article III in the foundational case *Lujan*, 504 U.S. 555. In *Lujan*, environmental groups challenged a regulation which was claimed to increase the extinction rates for certain endangered species. *Id* at 562-563. The groups submitted affidavits and other evidence attempting to show the individual plaintiffs would be "directly" affected by the looming potential harm to these species. *Id*. More specifically, the plaintiffs said they planned to "in the future" return to Sri Lanka. *Id* at 563. Those plaintiffs feared they would be unable to see the species due to harm caused by the regulation, but the plaintiffs could not return to Sri Lanka currently due at least in part to the ongoing Sri Lankan civil war. *Id* at 563-564. The court there deemed the injury was insufficiently "actual or imminent." *Id*.

Here, as in *Lujan*, the plaintiff claims plans to travel to Illinois at an unspecified future date. The Covid-19 pandemic is comparable as it prevents the plaintiff from being able to establish a definite travel itinerary. It would be a dramatic departure from the *Lujan* case to hold, now, that Plaintiff has standing despite the inherent and *admitted* indeterminacy of her plans and the simultaneous lack of injury she can plausibly plead as a result. Notably, even if in mid-February of 2021, Plaintiff had made definite travel plans, it does not change the fact that at the time of the original filing of this matter she lacked such plans, thereby preventing her from having standing to bring this claim due to lack of an imminent injury. Laufer has failed to establish standing and thus subject matter jurisdiction. She cannot cure this deficiency. Plaintiff's claim should be dismissed with prejudice pursuant to Rule 12(b)(1).

### B. Plaintiff Cannot Establish the Causation or Redressability Prongs of Standing Because She Has Alleged a Violation of the ADA Appearing on Third-Party Websites Over Which Old Capitol Has No Control.

U.S. Const. art. III, § 2, requires a plaintiff to have an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602

(7th Cir. 2013) (quotation omitted). Moreover, "[p]laintiffs bear the burden of establishing standing, and each element, including redressability, must be supported by more than unadorned speculation." *Plotkin v. Ryan,* 239 F.3d 882, 885 (7th Cir. 2001). Even at the pleading stage, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

On the question of causation and traceability, Plaintiff's standing falls on the facially untenable allegation Old Capitol "maintains" or "operates" websites such as expedia.com and booking.com and that ADA violations are present at "Defendant's websites." [*See* Doc. 51, ¶14]. Plaintiff's request for injunctive relief and corresponding demand that Old Capitol "revise its websites" [*See* Doc. 51, ¶15], is flawed, as Old Capitol does not own expedia.com, booking.com or any such third party travel website. Plaintiff makes no well-pleaded factual allegation establishing that Old Capitol is in control of that content, either directly or indirectly. [*See* Doc. 51, ¶14]. Plaintiff alleges no facts which show how Old Capital could possibly "fix" the third-party websites as Plaintiff demands.

On the contrary, in response to the first iteration of this lawsuit, Old Capitol provided the affidavit of Robert Plummer, which, in addition to identifying Old Capitol as the local hotel owner to clarify the identity of the parties, attested that the website for the HIE&S Vandalia is created and maintained by General Hotels Corporation and InterContinental Hotels Group plc or IHG, a British multinational hospitality company headquartered in Denham, Buckinghamshire, England. [Doc. 11-1, ¶11]. Mr. Plummer further attested that Old Capitol Properties, LLC does not maintain the HIE&S Vandalia hotel website or coordinate information placed on the website of the HIE&S Vandalia or other third party online reservations systems including Expedia.com, Booking.com, Orbitz.com, Agoda.com or Trip.com. [Doc. 11-1, ¶12]. Plaintiff apparently accepted as true

Mr. Plummer's helpful identification of local ownership, thus requesting leave of court to add Old Capitol [Doc. 13], but did not bother to investigate the remainder of the information provided in the affidavit.

Here, Plaintiff's claim for injunctive relief is supported, at best, only by unadorned speculation that Old Capitol "owns" the content of expedia.com and similar sites; and, at worst, is deliberately misdirected against a small, local hotel owner to avoid the logistical difficulties of legal action against more powerful third-party hotel reservation services. Plaintiff is aiming to pick low-hanging fruit, when it is perfectly obvious who is responsible for the content of expedia.com. Even assuming that expedia.com and similar websites are not ADA compliant, Old Capitol cannot provide the relief sought. Old Capitol, a local hotel concern, does not own the content of expedia.com and similar travel websites, and Plaintiff does not because is cannot allege well-pleaded facts supporting such ownership of those sites. Plaintiff has failed to meet its burden to allege traceability and redressability with well-pleaded facts as to Old Capitol. Plaintiff lacks standing for this reason as well, and dismissal is appropriate.

**II. Plaintiff Fails to State an ADA Claim Against Old Capitol, Because She Has Not Alleged an Actionable Violation of the ADA Regulations Governing Accessibility on Third-Party Websites.**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must state a claim that remains plausible on its face after the court disregards conclusory allegations. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). As the Seventh Circuit explained, "the plaintiff

37197-1

must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Here, Plaintiff failed to state a claim pursuant to Rule 12(b)(6) against Old Capitol, as the local owner of the HIE&S Vandalia. The complaint seeks to rely upon the implementing regulations of the ADA, 28 C.F.R. §§36.302(e)(1), for the requirement that hotel reservation systems must be ADA compliant. [Doc. 51, ¶¶7-9]. As a general proposition, this is true. The implementing regulations specifically provide, however, that a local hotel will <u>*not*</u> be responsible where a third-party reservation service fails to post ADA accessibility information that is otherwise made available:

> Hotels and other places of lodging that use third-party reservations services must make *reasonable efforts* to make accessible rooms available through at *least some of these services* and must provide these third-party services with information concerning the accessible features of the hotel and the accessible rooms. To the extent a hotel or other place of lodging makes available such rooms and information to a third-party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible.

28 C.F.R. Pt. 36, App. A (emphasis added).

Plaintiff has not alleged that Old Capitol *failed to make reasonable efforts* to make ADA information available through at least some third-party services, but rather, asserts in her Second Amended Complaint that Old Capitol "maintains" each of the third-party websites, and attributes their ownership to Old Capitol as "Defendant's websites." [Doc. 51, ¶14]. Plaintiff's "story," within the meaning of *Swanson*, simply does not hold together. *See Swanson,* 614 F.3d at 404. Such allegations are factually incorrect for obvious reasons and, more importantly for the purposes of this 12(b)(6) motion, are conclusory and inadequate to state a plausible claim under the ADA regulation under which Plaintiff seeks to proceed.

Plaintiff has not articulated a facially valid claim under the ADA simply by referencing the content of third-party travel websites and erroneously attributing ownership of such websites to a local hotel operator. *See, e.g., Strojnik v. VY Verasa Commer. Co. LLC,* 2020 U.S. Dist. LEXIS 169026, at *16 (E.D. Cal. 2020) (dismissing an ADA claim against a local hotel owner with prejudice reasoning that "because [plaintiff] has sued the [hotel], not the third-party websites, the [hotel] would only violate the ADAAG if it failed to make[] available such rooms and information to a third-party reservation provider. 28 C.F.R. § Pt. 36, App. A").

Moreover, it is unclear how Plaintiff could, in good faith, make a facially valid ADA claim against Old Capitol based upon the content of such third-party websites as required under Rule 11. Old Capitol has pointed out in its pleadings that it does not manage the content posted on expedia.com and similar websites, and provided the information on who manages such content. [*See* Doc. 11-1]. Old Capitol has also pointed Plaintiff to a different third-party website managed by IHG where such information is made available, demonstrating that the ADA accessibility information is in fact available through at least some third-party services as required by Section 36.302(e)(1). [*See* Doc. 11-3]. Plaintiff's pleading fails to state a claim, and cannot state a claim, such that dismissal with prejudice is appropriate.

### III. Plaintiff's Claim is Moot Because ADA Accessibility Information Sought Has Been at All Relevant Times Available on the HIE&S Vandalia Website, Operated By a Third Party.

Mootness is part of Article III's "irreducible constitutional minimum." *Paramount Media Grp., Inc. v. Village of Bellwood,* 929 F.3d 914, 919 (7th Cir. 2019). As a result, for the court to retain jurisdiction, an "actual controversy must be extant at all stages of review." *Id.* Where, as here, an issue is no longer "live" and the parties "lack a legally cognizable interest in the outcome," the claim is "moot and must be dismissed for lack of jurisdiction." *Hummel v. St. Joseph County Board of Commissioners*, 817 F.3d 1010, 1022 (7th Cir. 2016). Where ADA compliance is

established during the pendency of a case, dismissal is appropriate. *Id*. (renovation of non-compliant courthouse bathrooms found to moot claim).

Here, Plaintiff's ADA claim against Old Capitol is mooted by the pre-existing, alternate source of the information that Plaintiff seeks. The website for HIE&S Vandalia, which is managed by IHG, has an "Accessibility" page and lists: (1) Accessible Hotel area; (2) Hotel Areas with Accessible Routes from Accessible Public Entrance; and (3) Provided by Hotel, which lists various elements of accessibility. [*See* Doc. 11-3 (accessed in August 2020 when this lawsuit was first filed)]. In addition, the same website under its "Select A Room" function, has a picture of an individual in a wheel chair and would allow booking of, for example, a "King Hear Mobility Accessible Tub Nonsmk" room. [Id.] There are rooms listed as "disability access" that are available to be reserved by Plaintiff and the general public, as well. [Id.] This court also can take judicial notice that this website indicates that Plaintiff could reserve an accessible room to accommodate her needs as a disabled individual.

To the extent that Plaintiff suffered an "informational" harm by virtue of data allegedly missing from expedia.com and similar third-party websites, she has been fully informed by accessing this alternative website. As such, the injunctive relief she seeks in the instant action is moot because ADA accommodations are (and have always been) accessible to her on this website.

**IV. Plaintiff Lacks of Credibility, As a Matter of Law**

The Plaintiff's status as a tester and the Covid-19 pandemic's effects on the plaintiff's travel plans, as plead, are alone sufficient to illustrate that this Court does not possess subject matter jurisdiction. Yet, this plaintiff has a long history of amending complaints and filing affidavits to engineer around various district courts dismissing her many claims for lack of standing. These various late allegations that cause problematic inconsistencies, when viewed in light of her other claims, all suggest this plaintiff and her counsel are manufacturing averments. The lack of

credibility shown by this plaintiff allows this Court to dismiss the claim with prejudice. *See Am. Soc. For Prevention of Cruelty to Animals v. Feld Entm't, Inc*., 659 F.3d 13, 18, 398 U.S. App. D.C. 79 (D.C. Cir. 2011) (upholding a district court decision finding no Article III standing based on a credibility determination); *Long*, 182 F.3d 548, 554 (holding that at the pleading stage, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."); *Strickland-Lucas v. Citibank, N.A*., 256 F. Supp. 3d 616, 2017 WL 2876475, at *5 (D. Md. 2017) (quoting *Brown v. Ocwen Loan Servicing*, LLC, No. PJM-14-3454, 2015 U.S. Dist. LEXIS 110133, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), aff'd, 639 Fed. App'x. 200 (4th Cir. 2016)) (Affirming that "'[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.'").

A recent ADA claim of this nature, involving Plaintiff Laufer, was dismissed with prejudice based on the plaintiff's lack of credibility. *Laufer v. Naranda Hotels, LLC,* 2020 U.S. Dist. LEXIS 235894, at 12-13 (D. Md. Dec. 16, 2020). The court noted the egregious nature of the plaintiff's allegations. *Id* at 24. More specifically, the court discussed how, under the penalty of perjury, this plaintiff has told several district courts across the country that she plans to travel to their state "as soon as" the pandemic ends and to travel "all throughout" those states. *Id* at 25. While weighing the credibility of the plaintiff, the court noted Plaintiff Laufer asserted plans to travel to when the pandemic ends to Colorado, Connecticut, Illinois, Maine, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Texas, and Wisconsin. *Id* at 23-25. Most importantly, after her standing to sue has been challenged, this Plaintiff used almost identical language in each case to describe her travel plans, changing only the locations she plans to visit with the location of the defendant hotel. *Id* at 26. The court relied heavily on the fact that inherent in the plaintiff's use of cookie-

cutter sworn statements across the country is a core underlying inconsistency: it is impossible for her to travel to all of these places "as soon as" the pandemic ends. *Id*. It was reasoned by that court, that it would not serve the interests of justice to continue to spend significant court resources on these cases if this plaintiff lacks credibility and is not operating in good faith. *Id* at 27. In order to illustrate the problem that court stated "Plaintiff's approach to this ADA litigation appears to prioritize systematic, prolific filings over quality and depth of legal argument; churning out hundreds of near-identical lawsuits using cookie-cutter language irrespective of where the particular hotels are located, or any party or jurisdiction-specific details." *Id*.

Now, after having been found by one court to be incredible and having twice been granted leave twice to amend by this one, Plaintiff alleges that she has plans to travel from Florida to Maine, westward through Illinois and Colorado, and then along a southerly route back to Florida. [*See* Doc. 51, ¶10]. This Plaintiff has filed at least 567 lawsuits in this vein, and in all prior adjudicated cases has not alleged this sort of cross-country trip. This newly conjured travel plan does not cure the various deficiencies in the plaintiff's complaint, but it does illustrate the lengths to which she will go to bolster a facially groundless claim.  The hotel industry is legitimately under siege by the raging pandemic.  This Court should not allow this plaintiff to hide behind its instrumentality.  There is more than sufficient basis in the law to put a stop to it now while avoiding wasteful litigation.

## V.  Conclusion

Plaintiff lacks standing before this Court, because an ADA "tester" cannot establish a concrete and particularized injury by accessing a website from a foreign venue alone.  Moreover, in this instance, the ADA compliance issues allegedly occurred on third-party websites, over which Old Capitol has no control. Plaintiff's allegation that Old Capitol "owns" the websites is conclusory and inaccurate. Old Capitol did not cause an ADA compliance failure on third-party websites, such

as expedia.com, and has no ability to redress Plaintiff's grievance. Plaintiff's alleged travel plans are in flux indefinitely based on the ongoing Covid-19 pandemic, and therefore fail to establish an imminent future injury.

Plaintiff also has failed to state a claim under the ADA regulations, because a local hotel concern has no obligation to demand that all third-party websites strictly comply with the ADA. Instead, the ADA regulations provide that a hotel owner need only make *reasonable efforts* to make ADA accessibility information available through *some third party sites*. Plaintiff has alleged no such violation and has therefore failed to state a claim. Plaintiff's claim also moot, because the ADA accessibility information that Plaintiff seeks is, and has at all relevant times, been available on other third-party websites, such as the one operated by IHG. This plaintiff is simply not credible, and therefore should be denied standing. Plaintiff's ADA claim against Old Capitol should therefore be dismissed with prejudice pursuant to Rule 12(b)(1) and 12(b)(6).

        Respectfully submitted,

        */s/ Michael D. Schag*_____
        HEYL, ROYSTER, VOELKER & ALLEN, P.C.
        105 West Vandalia Street
        Edwardsville, IL  62025
        Phone:  618.656.4646
        Primary e-service: edwecf@heylroyster.com
        Secondary e-service:  mschag@heylroyster.com
        *Attorneys for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, a copy of the foregoing was filed using the Court's CM/ECF electronic filing system, which will effectuate service on all counsel of record.

        */s/ Michael D. Schag*_____
        *Counsel for Defendant*